Council, before we get started, would you help us out with how the parties are aligned and how we will allocate the 20 minutes per side? Your Honor, it's the appellees against the world, it appears. I'm Jay Allen Eisen, appearing for – I'm sorry, appellants, appearing for appellants whom we've described as the Toms family. There's no one else on our side. The opposition has several representatives. All right. The appellees will be sharing their 20 minutes. You'll have the full 20 minutes for your side. May it please the Court. There are three questions before you, although there are a number of sub-issues in two of them. The two with all the sub-issues are the questions on the merits. Did the district judge err in approving this class settlement and ordering a settlement bar against the Toms family? And was the settlement bar overly broad, if it was appropriate at all? Counsel, there's a suggestion of mootness here. Perhaps you might want to deal with that. Thank you. The case is not moot, Your Honor. The trustee and the Department of Labor are seizing on the settlement. I'm sorry, the appellees are seizing on the settlement with the trustee and the Department of Labor. That settlement carefully carved out the causes of action that the Toms family wished to pursue. It reserved their right to proceed against non-settling parties, including the Aesop Administrative Committee, which we see as an entity separate and apart from its individual members. Some of the members were included within the settlement because they're not only members of the committee, they're also members of the class, they are Aesop shareholders. They were brought within the settlement. The committee itself was not. That was specifically carved out. And the Toms family specifically reserved the right to proceed with all cross-claims and counter-claims. The case is not, in light of those reservations, moot. These issues are still alive. The questions still remain. What remedy would you have against Sierra and the Aesop committee members at this point? The Aesop committee, not the committee members. The committee would, of course, be liable, we contend, for any breach of its fiduciary duties to the extent there are bonds or insurance policies in place to protect for trustee liability. Those could be reached. Sierra, we contend, is the bad actor in this entire case, that all of this action is the result of efforts by Sierra successfully, unfortunately, to gut the Toms-Sierra company, destroy the value of the company, and in so doing destroy the value of the Toms-Sierra company's stock, the Aesop shares. So they would be on the hook, we contend, to reimburse anything that any of the losses that they caused, particularly to these family members, by their actions in gutting the company. The problem I have with this is that I'm just troubled to see what additional remedies or what better job you could do than the Department of Labor and the trustee did in bringing together this settlement. But what can you hope to achieve at this point, which resulted in a pretty impressive marshalling of a lot of funds to settle a lot of these claims? They did settle a lot of the claims and they did marshal funds. Those funds were substantially less, you'll recall, than the estimates of potential liability, which ran to as much as $30 million that had been sucked out of this Aesop, we contend, because of the actions of the Sierra company. Furthermore, we would have a right to contribution from the Sierra company. Now, I recognize in making that statement that I'm arguing against circuit precedent in the Kim case. We contend, however, that the United States Supreme Court's subsequent decision in Harris Trust renders Kim old and dead news. This is an interlocutory appeal, right? No. We are out of court at this point. Everything has been dismissed. This is our appeal and our effort to try to get back into court. It's not here on an interlocutory basis? No. This is an appeal from a final judgment of dismissal or final judgment. I think there are several orders. So if we affirm, is the case over, absent certiorari review? Absent cert. That's correct. We are seeking the opportunity, Your Honor, to do what we contend the trustee and DOL did not do. We submitted extensive documentation from valuation experts indicating that the information on which this settlement was predicated, the opinion of an accountant, Mr. Ainslie, that information was not reliable, was not worthy of being used for this settlement. Mr. Ainslie is not an expert in valuation. He was not initially retained as an expert in valuation. He never conducted an audit other than to take the figures that were provided to him informally, not under oath, not in discovery, and essentially see that they tallied. What do you make of section or paragraph 8A of the settlement agreement, this one that allows revisitation if additional later evidence is discovered of valuation that pushes the number up? That, in fact, we see as one of the more onerous provisions of the settlement because that now puts the burden on the ESOP beneficiaries, the employees who certainly, almost certainly, lack the resources to conduct the audit that we claim should have been conducted before this settlement was approved. Everyone seems to appreciate, even the district judge recognized, that it's highly unlikely that the employees would ever be able to gather the resources to do the work. Tom's family offered to put up $100,000 to conduct a real audit. We got into a dispute in the district court over just what the word audit meant. The district judge said that he didn't want to see a full-blown real audit going back, not just looking at the numbers, but going behind the numbers to find out what had happened to this company, how it is that a company that Sierra paid tens of millions of dollars for after a full year of intensive due diligence, review by the trustee, review by outside valuation experts, review by outside ERISA counsel, all of whom found this to be a fair market value transaction, how it could be that less than two years later this company is suddenly saddled with almost $20 million of debt, all of it owing to the purchasers who had originally swore that they were going to put in $10 million of new money, and there is extensive information in the file that what happened was that when Sierra came in, it proceeded to saddle the company with debt payable to itself and then began to engineer and structure the business to take the business away from Tom's and benefit Sierra and its principals, all to the detriment of the ESOP beneficiaries. Under this court order where you can have your audit subsequently, why couldn't the Tom's family do it on behalf of the ESOP? Tom's family can't do anything at this point. They're out of court. They're told that they are barred. They are barred. They could loan the money, I suppose, if they were willing to put up $100,000. That's a possibility. I haven't considered that. But they were part of the plaintiffs anyway, right? They were in a peculiar position because the Tom's family members themselves owned a substantial portion of the ESOP. They owned the majority shares of the company, but they also held stock in the ESOP. And the district judge essentially cut them out of any participation at all. He said, you're not a member of the class. He said it was inappropriate for them to be a member of the class, but did allow them to participate in the settlement. Did allow them to participate in the settlement. Did not allow them to come in and conduct the full evidentiary review that we contend was necessary so that the judge could make a fair and rational decision, is this money that they're putting up really appropriate in light of their fault, in light of their assets, in light of the potential outcome? We're not saying that the case should have gone to a full-blown trial. But remember, there is absolutely no formal discovery. No one was ever deposed. None of the information that was provided to Mr. Ainslie, to the trustee, to DOL, is under oath. It is all taken at face value. None of it is ever investigated to see, well, how come it is that the stock looks like this? How is this different? I understand it's a complex business transaction and stock and ESOP. How is this different from a straightforward civil case where A sues B and before the discovery gets ginned up, A approaches B and they reach a settlement and A goes into the settlement negotiations armed with information from an evaluation expert to help them, and then they go to court and say to the judge, we've settled this case. It's different in two significant ways, Your Honor. First, we're dealing with ERISA, and that has its own rules, regulations, procedures, and most importantly, as Judge O'Scanlan noted in his dissent in one of our cases, in the Howard case, high fiduciary duties. Secondly, the district judge, after the settlement is reached, accepted the proposal to certify a class and impose the settlement on that class. So this is not just A and B working with one another, working out a deal and going to court. Everybody in this case, the Toms family have their own individual rights at stake, but the district court also has before it the rights and duties and benefits of the ESOP beneficiaries. What's your best case that says there's a, that the district court is under an obligation when settling with some but not all of the defendants to permit discovery of the valuation basis for the settlement? I think there are two. One would be Molsky. This Court's decision in Molsky, 318 Fed 3rd, 937, which requires the district court to consider the strength of Plaintiff's case, the risk, expense, complexity and likely duration of further litigation, the risk of maintaining class action status throughout the trial. And your argument is that couldn't be done without adversarial discovery of the valuation expert? With nothing under oath, particularly given the fiduciary obligations imposed by ERISA and the further fiduciary obligations imposed by virtue of the fact that this is a class action. You were about to mention a second case? Yeah. I would also suggest that Howard v. Shea, which emphasizes that the ERISA fiduciaries have, quote, have fiduciary duties that are, quote, the highest known to the law. Everybody agreed in Howard v. Shea that it's not enough for the ERISA fiduciary to simply say, well, I'm going to hire this expert over here. She's going to tell me what I need to know, and that will be the magic wand. That was Judge Scanlon's phrase. The expert is not a magic wand. It requires more. You have to be certain that the information you give the expert is full and accurate. There was never any determination of full, accurate information. It was simply these numbers that were produced saying here's what the status of the company is today. According to Sierra, no effort to find out how it reached that status, who was at fault, who was responsible. There was a fair amount of evidence that Wells Fargo was badly asleep at the switch. They were asked several times to intervene. They were told repeatedly, this is what's going on. You've got to act. You've got to act. But nothing happens for more than a year and a half. The Toms family, when this deal starts to go sideways, when Sierra starts complaining, we were cheated, we don't have enough money to pay you, the Toms family says fine. Let's undo the whole deal. Here's your money. We're offering your money back. We offer to rescind. All or part. Take your pick. Sierra never does that. Sierra wants to hold on to the company, wants to continue to benefit from its manipulations. But no one has ever gone behind the allegations that that's what was going on. Many of those allegations and declarations under oath, no one has ever gone further to see what there is behind it. If you prevail here on appeal, what's your scenario? You go back to the district court and allow you to have discovery and have the valuation and maybe have some of the defendants to be more liable? Would it perhaps make your clients more liable? Could. There's that possibility. Of course, there's that risk. We believe that there's more substantial likelihood that it will lead to a right of contribution as well as pursuing the individual claims that the Toms family members have. Not being members of the class, they are not bound by that settlement. They can still proceed. As an individual client. Pardon? As an individual client. Right. They have their own individual rights to proceed in this case, some of which, by the way, some of their claims seem to have arisen after the transaction. Remember, the focus of the Department of Labor is that this transaction benefited the principles of the company at the time that it was done because they were paid more for their ESOP shares than the fair market value. No one has ever gone back to do a full fair market value. But the only real evidence we have of what the fair market value was that the parties perceived at the time is the evidence of that year of due diligence, the report by Valuation Associates, the ratification by Wells Fargo's trustee, the ratification by Wells Fargo's outside ERISA Specialist Council that this deal is kosher. There's even a provision, if I can quote it to you, that's in the record, referred to by appellees in one of the documents they refer to in their brief. This is the representation, warranty, and indemnification agreement that's part of the jury trial demand referred to in the appellee's brief. As an inducement to selling parties, that's the family, to enter into this agreement and perform their respective obligations, Sierra Energy represents and warrants to selling parties. Neither the execution and delivery by Sierra Energy of this agreement nor the consummation of this transaction contemplated hereby nor compliance by Sierra Energy with any of the provisions hereof will violate any statute, law, ordinance, code, regulation, rule, judgment, injunction, order, writ, decree, or arbitration award applicable to Sierra Energy. Now, there is a cause of action sitting there for breach of that express representation that Sierra Energy was making. We are completely cut off from that. Mr. Risen, what's the status of the Toms family ESOP shares at this stage? They've all been liquidated, I believe. That was part of the final completion of what we see as Sierra Energy's effort to acquire this company, if not for free, next to it. All of the ESOP shares were transferred to Sierra.  That's the result of the settlement. Well, doesn't that effectively bar you from any rights against ESOP at this point? No. Your right says this Court has held repeatedly that our rights as ESOP beneficiaries are determined as of the date the action is filed, whether we are ESOP participants then. It doesn't make any difference whether we're not. Yeah, but if you settle it and you transfer the shares, doesn't that moot the issue? No. That would if this were a derivative action on behalf of the corporation, but we're suing individually. We're not suing for injury to the corporation trying to recoup money for the corporation. We are suing for the loss of value of our shares. Those shares were transferred as part of this settlement, reserving at the same time our right to still seek compensation from Sierra, from the ESOP Advisory Committee. Was that an express reservation in the documents? Absolutely. All right. If I may, Your Honors, I say I've got three minutes and seven seconds left. You may reserve that.  May it please the Court. My name is Jim Driscoll, and I am here representing the Respondents, Sierra Energy and this Tom Sierra Company Administrative Committee. And I've agreed with Mr. Siegler here, who's representing the Department of Labor, that we will share our 20 minutes equally. And I will go first. Very well. And I will focus on the issues that I focused on in our brief, which were the standing mootness and waiver issues. He's going to focus on the issues he focused on in his brief in which we joined, which deal with the validity of the settlement. I'd like to ask the Court, as a threshold issue, we had filed a motion asking the that motion was not opposed by anybody, but I got a note from the clerk that it was being referred to this panel for determination. I'd like to know if I can refer to matters in the record in the district court that occurred after the notice of appeal was made. Those have already been served. Yes. We served supplemental excerpt of record. It's all there. No, you may do so. Thank you. That addresses one question that you asked of Mr. Eisen, which is whether this is an interlocutory appeal, and, of course, it is. The case is proceeding in the district court in front of Judge Carlton, even as we speak. The claim that Mr. Eisen described for you a few minutes ago, based on this representation warranty and indemnity agreement, was just served on my client three weeks ago in a new cross-complaint by the Toms against Sierra Energy. There's a hearing on June 14th before Judge Carlton where Toms Sierra Company has moved for judgment on the pleadings on the claim for contractual indemnity that the Toms asserted against TSC, and our Sierra Energy has filed a motion for summary judgment on its claim against the Toms that they breached an earlier settlement agreement that we had where they released all claims against my client arising out of this 1998, October 1998, stock transaction. So even if we were to completely affirm the district court, the matter would go back to district court for a resolution of these other pending matters? It's still going on. It wouldn't be schools out for the Toms. I'm sorry? It would not be the end of the case for the Toms. It is not the end of the case for the Toms. The Toms are still parties in the underlying case in the district court, and that case is still going forward, and they are asserting claims, and claims are being asserted against them, and they're being litigated in front of Judge Carlton. Are they asserting claims as plaintiffs or as defendants on a cross? I'm sorry? Are they asserting claims as plaintiffs or as cross-claims or cross-claims? They're all cross-claims. The plaintiffs were Judge Renfrew and the class and the DOL. The two cases were consolidated and those were the plaintiffs. They have now settled out with everybody. So it's down to a series of cross-claims between defendants and counter-defendants, cross-claimant defendants. I thought the settlement order was supposed to dispose of that also. There were claims that were not disposed of by the settlement and the bar. The bar does not reach the TOMS claim for contractual indemnity against TSC. It does not reach the TOMS claim for defamation against Sierra Energy. It did not, and the subsequent settlement by the TOMS with the plaintiffs accepted the claims by Sierra Energy and TSC from any release or bar. So the terms of those settlements left unresolved some of the claims by the TOMS against Sierra Energy and TSC and the claims by Sierra Energy and TSC against the TOMS. Everybody else is gone. All the other parties in this case have been dismissed. The Wells Fargo has been dismissed from this appeal, and that has an important consequence. And the TOMS have now settled with the plaintiffs, DOL and Judge Renfrew and the class plaintiffs. Well, then, with respect to your argument of mootness, that does not affect anything that's going on in front of Judge Carlton right now. Right. It does not. The claims that were that they would like to assert are still moot. That's not all the claims are moot, but the claims that are at issue in this appeal, the claims that were barred by the good faith settlement determination, those claims are moot. I want to very briefly, just for clarity, summarize the things that have happened since this appeal was filed. The TOMS settled with Wells Fargo. They dismissed this appeal as to Wells Fargo, and they dismissed all claims as to Wells Fargo with prejudice. The TOMS have settled with the plaintiffs, Judge Renfrew and the class plaintiffs and the DOL. All of those parties have been dismissed. And, importantly, the TOMS gave full releases to all members of the class, which includes my three clients, Claudette Horvath, Jim Dunbar and Gary Weiss, who were in October 1998 the administrative committee for the ESOP. You heard my question to Mr. Eisen about the valuation of the stock. He suggests that even though the TOMS family stock has been conveyed, that they still have a right of action with respect to valuation. What's your response? Well, a threshold point. There are two valuations that are at issue in this appeal. It's very important to bear that in mind. There's the question of what was the value of the stock in October 1998 when the TOMS sold their shares to the ESOP. That question bears on their liability and Wells Fargo's liability, because if they got more than the stock was worth at that time, it was a prohibited transaction under ERISA, it was not exempt, and Wells Fargo and the TOMS have liability. There's a second valuation. That is what is the question of the TOMS Sierra stock in the fall and winter of 2001 when Sierra Energy and the other TSC parties made their settlement with the plaintiffs in which they acquired all of the ESOP's shares of stock. Now, those are two completely different valuations. The first one bears on the TOMS' liability. The second one does not. The second one bears on whether the settlements were fair, reasonable, and adequate for the class. Okay? And the TOMS would like to mix and mingle those and kind of you kind of want to keep them all in play because they jump back and forth as to the importance of each of them. Having settled with Wells Fargo and the plaintiffs, the first valuation is now irrelevant to any issue in the case. The TOMS have discharged their liability for having participated in a prohibited transaction if they did, as alleged by the plaintiffs and the DOL, because they settled. And they have given up any claim they might have against Wells Fargo for contribution or indemnity if they ever had one because they settled with Wells Fargo. Well, now you get to the second valuation. And their claim there is that Judge Carlton could not legitimately value or approve the settlement in which Sierra Energy acquired those shares because he didn't have valid information as to what was the value of the shares in 2001. Okay? But if that number, there's a lot of arguments why they have no ability now to argue over that. One is waiver. They had the chance to put up the $100,000 and have an audit done. And it was an audit. Mr. Eisen wasn't there in September of 2002 when this was argued in front of Judge Carlton. He's got it a little bit mixed up. Now, there was going to be a full-blown audit of the financial figures that Sierra Energy and TSC gave to Judge Renfrew and his expert to see that that information was, in fact, accurate. They were going to get one of the big four accounting firms to do the audit. Then, if the information was accurate, Judge Carlton said, I don't need another expert to take that financial information and use it to give me a stock value. I'm satisfied that if he had accurate information, Paul Ainslie did a valid valuation. But it's that whole valuation. You review that for abuse of discretion? I'm sorry? Is that correct, that from the standpoint of this review at the court of appeals level, we review the abuse of discretion? That's correct. And Carlton gave the Toms that opportunity. They said they wanted the opportunity in September. But it was going to cost $100,000. They said they would happily pay the $100,000. Judge Renfrew did not want to pay $100,000 of the participants' money, because he had already seen the information. He was satisfied with it. The DOL didn't want to spend any money on it. They were satisfied. So the only persons that were objecting were the Toms. Carlton gave them the opportunity to do it. They thought about it and said, wait a minute, this doesn't do us any good. What this is going to tell us is what was the value of TSC in the fall of 2001. We don't care about that. We care about what was the value back when we sold our shares, because that's what determines our liability. And they reneged. So it was withdrawn. It never occurred. And so this audit never occurred, but they had the opportunity. And to come in now and say that they waived the argument, that they never had the chance to do an audit or to find out if what the real numbers were for TSC in the period after the sale in October 1998 leading up to the settlement. In addition, if they were to proceed, if you were to remand this now to Judge Carlton and say, take another look at this, and Judge Carlton, again, this time spent somebody else's money and got the audit, and the audit turns out that the numbers would support a much higher figure for the shares, then Sierra Energy is contractually obligated to pay that extra money. That's part of our settlement agreement. It's in. You've got the provision in the settlement agreement that says they'll pay the extra money. But as a practical matter, how would that work if we were simply to affirm across the board? Does the Times still have the opportunity to make some sort of a showing? No. Not if you affirm, because that the settlements are then conclusive. But if you reverse it, what happens, the only thing that can happen is possibly more money could go to the ESOP, in which the Times will never share because they have surrendered all their interest in the ESOP. Their settlement with the plaintiffs is important not because they settled, but because when they settled, they gave up all their interest in the ESOP. They surrendered any interest they have. So if there were an additional recovery by the ESOP, it does them absolutely no good. This Court can do nothing in this appeal that will affect their ability to recover any more money. They have no actual interest in the outcome of this. It won't affect their cross claims or anything of that nature. Well, you know, they argue they have these indemnity claims, indemnity and contribution claims, but all the claims that were ever asserted against them were brought under ERISA, so their indemnity and contribution claims are necessarily under ERISA, and that's how they've asserted them. There is no such thing as a contribution claim under ERISA. It doesn't exist. There's a real question whether there's an indemnity claim under ERISA. If there is, they can't bring it because you can't bring a claim under ERISA unless you're a participant or a beneficiary, and they're not. They gave that up. And there's no common liability. There's no point where their potential liability and Sierra Energy's overlap. Mr. Eisen did a very good job of demonstrating that all the claims against Sierra Energy are based on alleged conduct that occurred after the October 1998 transaction. All the alleged liability of the Toms is based on conduct that allegedly occurred leading up to and consummating that transaction. There's no place where they overlap. Mr. Driscoll, you're treading upon your co-counsel's time, and I apologize. Thank you. Okay. That's fine. May it please the Court. My name is Edward Seeger. I represent the Secretary of Labor. I'd like first to focus on the discovery issues, specifically the Toms argument that the district court abused its discretion by not allowing more discovery into the plaintiff's expert, Paul Ainslie. The short answer to this is that more discovery wasn't necessary, and there are a couple of reasons. First of all, it's important to know what the district court had to decide here. The issue for the district court was whether the settlement that the plaintiffs were proposing was as a whole fair, adequate, and reasonable. That means the district court has to look not just at the amount that the plaintiffs are receiving, but also at the risk of loss, the possible consequences of continuing to litigate. In this case, that would have been increased costs to the ESOP and the participants and also a possibility that the company might have gone bankrupt. So those are the things that the district court had to look at, and we think the district court had an excellent settlement here because the plaintiff's theory in this case, and the Secretary's also, was that the primary liability here was the 1998 stock transaction when the Toms family got $14.4 million, and ESOP ended up with stock which was worth, I think, maybe about $1.44 a share, something that would come to less than $1 million. So that's where the bulk of the liability is. And the counsel for the Toms family says, well, we're talking about $30 million liability here. As we said in our brief at page 37, that $30 million figure is based on an overlap. If you accept the plaintiff and the Department of Labor's view of the case, the primary liability is the stock transaction. When the stock wasn't worth anything to begin with, there's not much more further you can go until it gets to zero, so you don't have that $30 million liability. Now, the other thing that's important to remember on the discovery issue is that the district court found that the primary motivation of the Toms family was in their role as defendants. They weren't, you know, doing this to help the plaintiffs or the participants get more money. They were concerned because if there was not a valuation, and again, this is of the stock in 1998, that they would have to pay more as defendants. That was the primary motivation for them to get the discovery. And you can see it. I didn't want to interrupt you, but I didn't want to lose the opportunity to ask you about the settlement bar. That is your half of the argument, isn't it? Yes, Your Honor. It's pretty standard, whether it's correct in this case to have done it or not, but it's pretty standard in one of these good faith settlements to bar contribution and indemnity claims, isn't it? Yes, it is. But it's fairly unusual to bar direct claims, isn't it? I think it hasn't happened that I'm aware of, but it's not that unusual if you look at the underlying principles that should decide the issue. And that's basically why. Why is it appropriate in this case to bar direct claims? It's basically for the same reason that the participants who are in the class are going to be barred. And these principles are set out in cases governing class actions where you have a class which is not opt out and the courts have to decide whether the settlement can bind them or not. Basically, as this court did in the class plans versus city of Seattle case and some of the other ones, it looks to see if there are three things that have happened. First, whether the interests of the participants have been adequately represented. That's probably the most thing, most important thing here. And we think that the interests of all the participants, not only the ones who are in the class, but also the Tom's family, were adequately represented because we had a non-conflicted fiduciary, Judge Renfro, and we also had the Department of Labor participating in the settlements. The interest that they have as participants is exactly the same interest as the participants who are in the class. The reason they weren't in the class was not because their interests couldn't be represented. It was because you'd have the anomalous situation of Judge Renfro representing the plaintiffs and also representing the defendants if they were in the class. So there's no problem there. And I think the alternative to not allowing this kind of a settlement bar means that there's no incentive to settle because the parties who would settle would just have to turn around and be sued by the people who are not settling on the very claims that they want to settle. So there's no problem there. The other things that you look for on the bar are whether the people who object to the settlement had an opportunity, a fair opportunity to present their objections. And I think that's met here. And part of that's because there was no real need for the more discovery. There are a number of things that the Tom's family said here. I don't think I have time to go into all of them, but I would like to say as far as ERISA goes and their reliance on Howard v. Shea, we addressed that at our brief pages 31 to 33. There's no problem with that because there's an exception that the Secretary of Labor has recognized. When the Secretary is a party to the settlement, as the Secretary is here, and it's approved by a district court, you don't need to get into this business of figuring out the exact value of the settlement, whether it's for adequate consideration and all the other fiduciary responsibilities that otherwise would apply in transferring shares from the participants to a party in interest, as we have here. I think one other point on the settlement issue, I think it's probably been alluded to earlier, and that is that the Ainslie valuation was not the only one that was at issue here. The district court also could rely on the Secretary's representation that we did our own valuation. It was independent from Ainslie, and we got a result that was consistent with the Ainslie one. I think that we've also ---- That evaluation shared with all the parties or was it internal? It was not shared with all the parties. We just made the representation at the fairness hearing that it had been done, so that's not in the record. There is in the record, though, a reference to a couple of other valuations that were done, and I think this is important because the district court was saying part of the reason they didn't want to have another valuation is because there had already been too many of them. And this is at the excerpts of record, pages 800 and 812. That's the plans expert's report, Paul Ainslie. He referred to two valuations that had previously been done. One was done for Wells Fargo when they were having to value the ESOP shares, and the expert there, who was completely independent of Ainslie, reached a result consistent with Ainslie's. The second was a valuation done by a group called Pilot Financial that was supposed to decide what the shares of the ESOP were worth for purposes of ERISA. Every year the plan has to file an annual valuation of the ESOP shares, and this valuation came in at, I think, about $1.44 a share, which would have come to maybe a million to a million and a quarter total value, which is substantially less than the $5 million Sierra Energy settlement, so there's no problem there. And the judge was aware of that? Pardon me? The judge was aware of these other evaluations? I think that the judge said that we've already had enough valuations. I'm not sure he specifically mentioned each specific one, though. Thank you, counsel. Mr. Risen, you have some reserve time. Perhaps the most eloquent statement of what was before the court and what the court acted on was the district judge's comment. I have read this three times, and I still do not understand what it is. There was never sufficient evidence to approve this settlement. We requested even a Daubert hearing to find out what Ainslie had done, whether he was reliable. Denied. By the way, I should mention, this is the first occasion that I've heard that there was anything other than Ainslie's calculations and the unsupported representation that DOL did its own evaluation. I was never before aware that there was some other evaluation. If there was, I don't believe it's part of this record. Neither was anything that DOL allegedly did. Did the Department of Labor advise the court that it had another evaluation but didn't say what the ---- It just said we've done our own investigation, period. Said they were satisfied with it. They were satisfied. We don't know whether that investigation was anything more than looking over Ainslie's figures to see if they added up and came to the same results. The problem we have is not just the value on the day that the ESOP shares were sold, that this transaction took place, and then the value three years later. Our position has consistently been that those shares were, in fact, worth the full price that was paid for them by Sierra after that extensive due diligence, that the reason they were worth much less, worthless, effectively, three years later, was the actions of Sierra Energy, and that an audit required more than simply what the district judge offered, which was not an audit, but a review, he said. I'll let you review Ainslie's work, but I will not go behind that. I am not going to have accountants come into this court, he said, and go behind that and try to figure out, was it, in fact, worth that, and what happened to the value in between? That's what an audit would have shown, where the money went, who took it, what they did with it. That's what we were never allowed to do. There was never any effort to determine just what is, by any formal discovery, exactly who is responsible for this mess, what is the relative culpability, and then measure the settlement in light of that. With respect to the contention from TSC that ERISA rights have been cut off because we gave up the stock, I again refer you to the briefs, Your Honors, and the language of this court in Crotty. Whether a person is a planned participant, that is, someone entitled to relief under ERISA, must be determined, decided, as the date of filing the lawsuit. Close quote. That's Crotty at page 545, and that's citing back to Harris versus Provident Life and Accident. We believe that this class settlement should not have been approved. The district judge certainly should not have issued the bar order cutting off our rights to contribution and indemnity and our direct claims. This case is not moot despite the interim settlements. We ask you to reverse and remand. Thank you, counsel. The case just argued will be submitted for decision. We thank counsel on both sides for a very thorough argument of these issues. It's a very complex case, and we appreciate your help on it. Thank you.
judges: O'scannlain,siler , Hawkins